996 So.2d 936 (2008)
James GILLEY, Appellant,
v.
STATE of Florida, Appellee.
No. 2D06-5234.
District Court of Appeal of Florida, Second District.
December 12, 2008.
*937 Peter A. Sartes of Law Offices of Tragos & Sartes, Clearwater, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Tonja Rene Vickers, Assistant Attorney General, Tampa, for Appellee.
FULMER, Judge.
James Gilley appeals his convictions for first-degree murder and three counts of attempted first-degree murder. Gilley raises five issues in this appeal, two of which we address here. We agree with Gilley's argument that the trial court erred in allowing the State to introduce a large amount of evidence relating to crimes committed by codefendants who were tried separately. We also agree with his argument that the trial court erred by including the codefendants' names in the jury instructions, using the "and/or" conjunction, as though they were also on trial. These errors require that we reverse the convictions and remand for a new trial.
In case number 03-07061, Gilley was indicted for the first-degree murder of Cynthia Bethune, occurring on April 25, 2003. The indictment also charged two codefendants, Antwan Brinson (also known as Alton Hall) and Deontae Thomas, with the first-degree murder of Cynthia Bethune, and it charged Thomas alone in a second count with the first-degree murder of Bernard Johnson, occurring on April 23, 2003. In case number 03-07065, an eighteen-count information was filed against Gilley and three codefendants, Thomas, Brinson, and George Hall. In counts eleven, twelve, and thirteen, Gilley was charged with the attempted first-degree murder of Louis Smith, Officer Timothy Virden, and Officer Troy Gardner, respectively.[1] Gilley was tried separately from his codefendants in one trial encompassing the first-degree murder charge and the *938 three attempted first-degree murder charges.
Bethune, an innocent bystander, was shot in the head by a stray bullet when the occupants of a Chevrolet Impala shot into another car driven by Louis Smith. Smith accelerated as he drove past the Impala and was not injured. The shooting at Smith's car was viewed by an undercover officer who was behind the Impala. Marked police cruisers located the Impala and tried to stop it. A high-speed chase ensued, with the occupants of the Impala firing at the pursuing officers, Verdin and Gardner. The chase ended when the police bumped the back of the Impala and caused it to flip over. The police arrested four occupants of the Impala: Gilley, Thomas, Brinson, and Dorian Watson. Watson cooperated with the police investigation and was not prosecuted.
Gilley argues that the trial court erred in allowing the State to introduce evidence of the other crimes charged in the indictment and information committed by the codefendants, particularly evidence pertaining to the murder of Bernard Johnson for which Thomas had already been convicted by the time of Gilley's trial,[2] under the State's representation that the evidence would set the stage for the series of events. The State responds that Gilley has not established prejudicial error because it was necessary to include the testimony in order for the State to explain the circumstances of Bethune's killing and to establish the context in which the Bethune killing occurred.
We agree with Gilley that the large quantity of evidence that the State introduced relating to the Bernard Johnson murder resulted in that crime being a feature of Gilley's trial. This issue was the subject of a motion in limine hearing. The defense attorneys objected numerous times throughout the trial to the evidence relating to the Bernard Johnson murder and other crimes by codefendants. The error in this case is similar to that of Steverson v. State, 695 So.2d 687 (Fla. 1997), and Thomas v. State, 959 So.2d 427 (Fla. 2d DCA 2007). In Thomas, this court noted that under the "inextricably intertwined" theory, evidence of collateral acts is admissible when "`it is a relevant and inseparable part of the act which is in issue.... [I]t is necessary to admit the evidence to adequately describe the deed.'" 959 So.2d at 430 (quoting Griffin v. State, 639 So.2d 966, 968 (Fla.1994)). However, as in Thomas, most of the collateral evidence at issue here did not meet this test.
The Bernard Johnson murder was marginally relevant to explain why Gilley was fearful of Louis Smith, as Smith drove up beside the Impala. Gilley was a cousin of Thomas and knew about the Johnson murder and, apparently, was motivated to protect himself from Johnson's friends at the time that Bethune was shot. Beyond that, it was not necessary to admit the extensive evidence of the prior crimes committed by the codefendants to adequately describe the deed for which Gilley was being tried individually. See Steverson, 695 So.2d at 690 ("[W]hile `some reference' to the [collateral crime] would have been permissible, there is absolutely no justification for admitting the extensive evidence received *939 here."). As occurred in Thomas, "[t]he State proceeded almost as if it had been successful in its attempt to consolidate the various charges" against all codefendants for trial. Thomas, 959 So.2d at 430. The extensive and detailed evidence of the Johnson murder served as a large distraction from the factual issues facing the jury for the crimes charged. Because the collateral crime evidence improperly emphasized the Johnson murder and other criminal acts occurring prior to the shooting at issue to such an extent that these collateral crimes committed by the codefendants became a feature of the trial, this error was not harmless. See Ellis v. State, 622 So.2d 991, 998 (Fla.1993) ("Whenever improper evidence becomes so prominent a feature of the trial, a court cannot find that the error was harmless beyond a reasonable doubt.").
Next, Gilley argues that the use of the "and/or" conjunction in the jury instructions requires a reversal for new trial.[3] Throughout the jury instructions (at least seventeen times), the trial court referenced "James Gilley and/or Deontae Thomas and/or Alton Hall" as though the three were being tried together on each count. Gilley's counsel objected during the charge conference, preserving this issue for appeal.
The Florida Supreme Court has held that the use of "and/or" to link codefendants was error in a case where multiple defendants were tried jointly. Garzon v. State, 980 So.2d 1038, 1039 (Fla.2008); see also Hunter v. State, 33 Fla. L. Weekly S745, ___ So.2d ___, 2008 WL 4352655 (Fla. Sept. 25, 2008) (applying the holding in Garzon). In Garzon, the court's analysis centered on whether the error was fundamental, and the court concluded that no fundamental error occurred in that case, in part because other instructions given "properly framed the use of the `and/or' instruction." Garzon, 980 So.2d at 1044. For example, in Garzon, the jury was given a "multiple defendants" instruction, which explained to the jury that separate counts were charged against each defendant. Id. There was no such instruction given in this case, and one would not have been applicable.[4]
In this case, because Gilley was tried separately, there was no apparent rationale for including the codefendants' names in the jury instructions. By improperly referencing the codefendants, the instructions permitted the jury to find that the State had met its burden of proof if any of the three codefendants had been responsible for the death of Cynthia Bethune. Under a literal reading of the instructions, the jury could have found Gilley guilty even if it did not find him to be a principal. Thus, the instructions lessened the State's burden of proving Gilley's participation in the crimes. This error was not harmless. See, e.g., State v. Kettell, 980 So.2d 1061, 1068-69 (Fla.2008) (concluding that jury instruction error was not harmless where instruction impermissibly reduced the State's burden to prove the intent element of the crime).
Reversed and remanded for a new trial.
NORTHCUTT, C.J., and SILBERMAN, J., Concur.
NOTES
[1] Gilley was also charged in counts six, seven, eight, and nine of the information, but the State nolle prossed those counts before trial.
[2] Gilley's trial occurred between October 23 and October 31, 2006. This court reversed Deontae Thomas's conviction for the first-degree murder of Bernard Johnson and ordered a new trial in an opinion dated June 27, 2007. Thomas v. State, 959 So.2d 427 (Fla. 2d DCA 2007). This court's opinion in Thomas sets out the facts of the Bernard Johnson murder and the events that followed, including the events underlying the charges against Gilley in this case.
[3] Based on our reversal, it is not necessary for us to address this issue, but we do so to prevent this error from being repeated at a new trial.
[4] The State's assertion in its brief that Gilley was given a "multiple defendants instruction" is wrong. The cited reference is to the independent act instruction, the giving of which does not remedy the error committed.